NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERNARDO DIAZ MENDEZ, | |
| Plaintiff, | Civ. No. 21-3847 (CCC) (JSA) |
| v. | |
| UNITED STATES OF AMERICA, et al., | **OPINION** |
| Defendants. | |

**CECCHI, District Judge.**

**I.    BACKGROUND**

*Pro se* Plaintiff Bernardo Diaz Mendez ("Plaintiff"), a pretrial detainee at Essex County Correctional Facility ("ECCF"), originally filed a complaint against the United States alleging various civil rights violations related to restrictions imposed during the Covid-19 pandemic. ECF No. 1. Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP") (ECF No. 4) and a motion for leave to file an amended complaint adding various defendants: federal (the Marshals Service, this Court, former Chief Judge Wolfson, the Department of Justice), state (Governor Murphy, Essex County, Director Ortiz, Warden Cirillo), and a state contractor (CFG Medical Services) (ECF No. 3).[1] Magistrate Judge Mark Falk denied the motion to amend without prejudice because Plaintiff's IFP application had not yet been decided, nor his complaint screened pursuant to 28 U.S.C. §§ 1915(a)(2) and (e)(2)(B). ECF No. 5.

Considering the initial and amended complaint together (collectively, the "Complaint"), Plaintiff asserts claims pursuant to (1) *Bivens v. Six Unknown Named Agents of the Federal Bureau*

---

[1] Plaintiff filed two motions to amend, but the first (ECF No. 2) did not attach an amended complaint.

*of Narcotics*, 403 U.S. 388 (1971); (2) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*; (3) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d); (4) the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*; (5) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42. U.S.C. § 2000cc *et seq.*; (6) 42 U.S.C. §§ 1983, 1985, 1986; and (7) the Administrative Procedures Act, 5 U.S.C. § 702.[2]  ECF No. 1 at 1.  For the reasons below, this Court grants Plaintiff's IFP application, but dismisses the complaint after screening.

## II.  LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding IFP.  *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive screening, the complaint must allege "sufficient factual matter" to show that the claim is facially

---

[2] Numerous federal detainees have filed the same form complaint which differs only in the name and docket number assigned to the complaint.  "In many cases, the district court dismissed the earlier versions of the complaint for suing only the United States, which was immune under sovereign immunity."  *Murray v. United States,* No. 21-4903, 2021 WL 4772174, at *1 (D.N.J. Oct. 13, 2021).  In others, like this case, plaintiffs preemptively sought to file an amended complaint, rather than face dismissal of their initial complaints.

2

plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "A *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. To state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A plaintiff may also have an implied cause of action for constitutional violations committed by federal actors in very limited circumstances. *See Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). To state a claim under *Bivens*, a plaintiff must allege (1) a deprivation of a right secured by the Constitution or laws of the United States, and (2) that the

3

deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).[3]

## III. DISCUSSION

### A. Plaintiff's IFP Application

The PLRA, which amended 28 U.S.C. § 1915, establishes certain financial requirements for prisoners who are attempting to bring a civil action IFP. Pursuant to the PLRA, a prisoner bringing a civil action IFP must submit an affidavit, including a statement of all assets, which states that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period

---

[3] The Court assumes for the purpose of this Opinion that an implied remedy exists for the claims Plaintiff asserts against federal actors. However, recent Supreme Court decisions cast doubt on the availability of such relief.

In *Bivens*, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, *see Bivens*, 403 U.S. at 397, and "opened the door for courts to exercise their judicial power to fashion [ ] damages remed[ies] against federal officers for other types of constitutional violations," *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020). Since the Supreme Court decided *Bivens*, however, it has extended the remedy to other contexts only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and second, to a claim for inadequate prison medical care under the Eighth Amendment's Cruel and Unusual Punishment Clause, *see Carlson v. Green*, 446 U.S. 14, 18–23 (1980).

Recently, the Supreme Court has cautioned against expanding *Bivens* into new contexts and described it as a "disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In *Abbasi*, the Supreme Court set forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *Id.* at 1859. If the case differs "in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." *Id.* Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See id.* at 1860. This inquiry asks whether the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *See id.* at 1858.

In *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the Supreme Court clarified that the two-step process laid out in *Abbasi* often resolves to a single question: whether there is any rational reason to think that Congress might be better equipped to create a damages remedy. *Id.* at 1803. If there is, a plaintiff cannot recover under *Bivens*. *See id.*

The Court need not decide whether a *Bivens* remedy exists in this matter in light of *Abbasi* and *Egbert* because, as discussed below, Plaintiff's claims against federal actors fail for other reasons. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (stating that disposing a *Bivens* claim on other grounds, while assuming the existence of a *Bivens* remedy, is appropriate in many cases).

4

immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). Here, Plaintiff has complied with the PLRA's requirements and demonstrated indigence. Accordingly, the Court will grant IFP status and screen the Complaint.

### B. Immune Defendants

#### 1. United States

First, the Complaint seeks to assert civil rights claims against the United States. The United States, however, is not subject to suit for constitutional torts, including the civil rights claims Plaintiff seeks to raise, and is entitled to absolute sovereign immunity in this matter. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 476-77, 484-85 (1994) (the United States is immune from suit for constitutional torts, and *Bivens* provides no cause of action against the United States or its agencies); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) (sovereign immunity bars suit against the United States either for damages or for injunctive relief requiring government action); *United States v. Rural Elec. Convenience Co-op. Co.*, 922 F.2d 429, 434 (7th Cir. 1991) (sovereign immunity bars suits seeking damages or coercive injunctive relief); *Scott v. Manenti*, No. 15-7213, 2016 WL 80640, at *1 n. 2 (D.N.J. Jan. 7, 2016).

To the extent that Plaintiff asserts a claim pursuant to the Federal Tort Claims Act ("FTCA"), the "FTCA operates as a limited waiver of the United States' sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. An incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages, and may not recover for mental or emotional damages in the absence of physical injury. *See* 28 U.S.C. § 1346(b)(1)–(2); *CNA v. United States*,

535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").

A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at 457. "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States'[ ] consent to be sued, they are jurisdictional." *Id.* An agency's final denial of the tort claim is a jurisdictional requirement. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). These requirements cannot be waived; if a plaintiff has not complied with the FTCA's pleading requirements, "a district court has no subject matter jurisdiction over the claim." *Hardie v. United States*, 501 F. Supp. 3d 152, 158 (E.D.N.Y. 2020), *aff'd*, No. 21-106, 2021 WL 4427852 (2d Cir. Sept. 27, 2021).

Here, the Complaint fails to reference any notice of a tort claim, a demand for a sum certain, or that Plaintiff has otherwise exhausted his FTCA claim. *See* ECF No. 1. Accordingly, the Court will dismiss without prejudice Plaintiff's FTCA claim against the United States "for failure to sufficiently allege the jurisdictional basis" for his claim. *Hoffenberg v. United States*, No. CIV.A. 10-2788, 2012 WL 379934, at *4 (D.N.J. Feb. 6, 2012).

### 2. Marshals Service, Department of Justice, and District of New Jersey

The other federal Defendants are immune. Federal departments and agencies, such as the Department of Justice and the United States Marshals Service, are immune from suit in civil rights matters. *See, e.g.*, *Hindes v. F.D.I.C.*, 137 F.3d 148, 158–59 (3d Cir. 1998) (federal governmental entities are not "persons" subject to suit in a federal civil rights matter); *see also Gary v. Gardner*, 445 F. App'x 465, 466–67 (3d Cir. 2011) (finding that "the United States Marshals Service is entitled to sovereign immunity from suit" absent an explicit waiver of sovereign immunity). This

Court is likewise entitled to sovereign immunity. *See, e.g.*, *Gamble v. United States Dist. Ct. of Rhode Island*, No. 18-778, 2019 WL 1301727, at *2 (D. Del. Mar. 21, 2019). Accordingly, Plaintiff's claims against this Court, the United States Marshals Service, and the United States Department of Justice are dismissed with prejudice.

### 3. Chief Judge Wolfson

Plaintiff challenges Chief Judge Wolfson's decisions to exclude time under the Speedy Trial Act due to the ongoing Covid-19 pandemic. However, judges are generally "immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991). Judicial immunity stems from "the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). Generally, judges "are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 355–56 (1978)); *cf. Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769–70 (3d Cir. 2000) (holding that judges are not entitled to immunity for mere "administrative acts"); *see, e.g.*, *Forrester v. White*, 484 U.S. 219, 229 (1988) (judge was acting in an administrative capacity in terminating a subordinate court employee).

Here, Chief Judge Wolfson's orders were "clearly issued in a judicial rather than administrative capacity," notwithstanding Plaintiff's assertion to the contrary, with respect to the exclusions of time under the Speedy Trial Act. *Hill v. United States*, No. 21-03872, 2021 WL 3879101, at *3 (D.N.J. Aug. 30, 2021). "Chief Judge Wolfson addressed and adjudicated a legal issue before her, *i.e.*, the effect of a global pandemic on the speedy trial rights of the pretrial detainees in this District." *Welch v. United States*, No. 21-10866, 2021 WL 4772110, at *3 (D.N.J. Oct. 13, 2021).

Chief Judge Wolfson is likewise entitled to immunity with respect to Plaintiff's requests for injunctive relief.  In 1996, Congress amended 42 U.S.C. § 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *See Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006) (provision applies to both state and federal judges).  Here, Plaintiff has not properly pled that Chief Judge Wolfson violated any declaratory decree or that declaratory relief is unavailable.  Plaintiff summarily concludes that "[a] decree was violated[,] and declaratory relief was not made available."  ECF No. 3 at 6.  However, Plaintiff's bare conclusions are insufficient to state a claim for relief.  *Kaplan v. Holder*, No. 14-1740, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015) (citing *Iqbal*, 556 U.S. at 678).  Consequently, Chief Judge Wolfson is entitled to judicial immunity from Plaintiff's claims for injunctive relief.

Plaintiff also asks this Court to "declare" that Chief Judge Wolfson violated a litany of statutes and constitutional amendments.  ECF No. 3 at 27.  Declaratory judgment, however, "is inappropriate solely to adjudicate past conduct."  *Corliss v. O'Brien*, 200 F. App'x 80, 84–85 (3d Cir. 2006).  "Nor is declaratory judgment meant simply to proclaim that one party is liable to another."  *Id.*

If Plaintiff seeks declaratory relief to prospectively protect his rights, he has not pleaded facts to support such a claim.  As discussed in greater detail below, Plaintiff—like the other plaintiffs utilizing a virtually identical, boilerplate complaint—styled this Complaint as a class action, offering no details specific to his own situation.  This Court "concurs with other courts throughout the District of New Jersey and finds that Chief Judge Wolfson's standing orders, issued in response to the COVID-19 pandemic" are "supported by detailed findings, and provide[ ] a

sound factual and legal basis that any delays are supported by the ends of justice, consistent with the Speedy Trial Act and the Sixth Amendment." *United States v. Hafner*, No. 19-790, 2021 WL 1873560, at *3 (D.N.J. May 10, 2021) (internal quotation marks omitted) (citing *United States v. Kaetz*, No. 20-1090, 2021 WL 37925, at *8 n.8 (D.N.J. Jan. 4, 2021); *Chu*, 2021 WL 879905, at *4).

Chief Judge Wolfson conducted an appropriate balancing test under the Speedy Trial Act in Standing Order 21-04:

> [T]he Court recognizes the trial, procedural and substantive rights of criminal litigants and particularly, their right to a speedy and public trial under the Sixth Amendment (and the particular application of that right in cases involving defendants who are detained pending trial). However, the Court also recognizes the compelling public health and safety issues outlined in this Standing Order, and therefore, pursuant to 18 U.S.C. § 3161 (h)(7)(A), finds that the ends of justice served by taking such action materially outweigh the best interests of the public and the parties in a speedy trial. Accordingly, the Court ORDERS that the time period of March 16, 2020 through June 1, 2021 shall be "excluded time" under the Speedy Trial Act. Having considered the factors outlined in 18 U.S.C. § 3161(h)(7)(B), the Court finds specifically, that the failure to grant such continuance would be likely to make a continuation of proceedings impossible, or result in a miscarriage of justice. Such exclusion is necessary to assure that in cases going to trial, there is a full, unhindered, continuously serving jury venire and seated jury in every case, which is central to the sound administration of justice. Such exclusion of time is also necessary in cases not yet set for trial in order to address the reasonably anticipated difficulties in defense counsel communicating or visiting with clients (including those detained in locales and facilities under a declared state of emergency), and the inherent delay in the scheduling of further trials as a consequence of the exclusion period herein. The Court may by further Order or Extension extend the period of exclusion as circumstances may warrant, and the assigned judicial officer may, by Order, also do so in connection with any specific proceeding.

The "Chief Judge specifically acknowledged the importance of the right to a speedy and public trial and balanced the interests of defendants and the public in that right against the

9

compelling public health and safety issues arising out of the COVID-19 pandemic." *Hafner*, 2021 WL 1873560, at *3. That, coupled with a lack of information specific to Plaintiff's individual circumstances, compels a conclusion that the Complaint fails to state a claim for declaratory relief regarding Plaintiff's speedy trial rights.

Accordingly, the Court will dismiss with prejudice Plaintiff's claims against Chief Judge Wolfson for monetary relief and dismiss without prejudice Plaintiff's claims against her for injunctive and declaratory relief.

### 4. Governor Murphy

Plaintiff also asserts claims for monetary relief against Governor Murphy in his official capacity. However, sovereign immunity under the Eleventh Amendment renders "states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Accordingly, New Jersey state agencies "established in the Executive Branch of State Government" are entitled to Eleventh Amendment sovereign immunity, "regardless of the relief sought," unless an exception applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation marks omitted). Those exceptions apply when (1) Congress abrogates the immunity; (2) a state waives immunity; or (3) when a plaintiff sues individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Here, Governor Murphy is a state official sued in his official capacity. ECF No. 3 at 7. Consequently, he is entitled to sovereign immunity from Plaintiff's claims for monetary damages. *Hafer v. Melo,* 502 U.S. 21, 25 (1991); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

99–100 (1984). Accordingly, the Court will dismiss Plaintiff's claims against Governor Murphy with prejudice.

### C. Racketeer Influenced and Corrupt Organizations Act Claims ("RICO")

Next, Plaintiff claims that every Defendant is liable under RICO, 18 U.S.C. § 1962(c), (d). ECF No. 3 at 23. RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010). Section 1962(d) makes it unlawful "for any person to conspire to violate § 1962(c)." *Id.* "To plead a RICO claim under § 1962(c), 'the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (*quoting Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "'pattern of racketeering activity' requires at least two acts of racketeering activity" as set forth in § 1961(a), within a ten-year period. 18 U.S.C. § 1961(5).

Here, Plaintiff fails to sufficiently plead the elements of a RICO claim. The Complaint only alleges that "defendants . . . acted as a criminal enterprise that is run as a business with a pattern of illicit conduct exceeding two predicate acts that equate[ ] to fraud, corruption, violence, and activity in furtherance of human trafficking and slavery." ECF No. 3 at 23. Plaintiff does not detail the enterprise, what conduct he specifically believes violated RICO, and/or what predicate acts he believes to have been racketeering activities. *See id.*

Additionally, Plaintiff fails to plead cognizable RICO losses. Plaintiffs may only use a civil RICO claim "to recover 'concrete financial loss' in the form of an injury to property or

11

business, personal injury or emotional harm are not proper bases for a RICO claim." *Cabbagestalk v. United States*, No. 21-4902, 2021 WL 2260517, at *1–4 (D.N.J. June 3, 2021) (quoting *Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *6–8 (D.N.J. August 19, 2015)); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).  Every claim here stems from alleged constitutional violations, which are not proper RICO losses.  And even if Plaintiff had pled proper losses, his bare conclusions are insufficient to state a claim for relief.  *Kaplan*, 2015 WL 1268203, at *4 (citing *Iqbal*, 556 U.S. at 678).  He cannot rely on "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements." *Iqbal*, 556 U.S. at 678.  Accordingly, the Court will dismiss Plaintiff's RICO claims without prejudice for failure to state a claim.

### D.  Religious Freedom Claims

Plaintiff next asserts claims under RFRA, 42 U.S.C. § 2000bb *et seq.*, and RLUIPA, 42 U.S.C. § 2000cc *et seq.*  RFRA "prohibits the Federal Government from taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690–91 (2014).  RLUIPA "allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting *Gonzales v. O Centro Espírita Beneficente Uniõ do Vegetal*, 546 U.S. 418, 436 (2006)).  However, RLUIPA applies "on a more limited category of governmental actions." *Watson v. Christo*, 837 F. App'x 877, 881 n.6 (3d Cir. 2020) (quoting *Burwell*, 573 U.S. at 695).  To state a claim under either statute, "Plaintiff must allege facts that indicate that the federal government substantially burdened a sincerely held religious belief." *See, e.g.*, *Martinez v. United States*, No. 21-4336, 2021

12

WL 2224268, at *4 (D.N.J. June 2, 2021) (citing *Holt*, 574 U.S. at 360–61); *Gambino v. Cassano*, No. 17-0830, 2021 WL 1186794, at *5 (D.N.J. Mar. 30, 2021). A substantial burden exists where

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007).

Here, Plaintiff does not plead any facts regarding his personal religious beliefs or tenets. ECF No. 3 at 40-43. Plaintiff alleges only that pandemic restrictions have generally hindered certain religious practices at the facility. *Id.* Without specific allegations as to his personal religious beliefs (and how they were burdened), the Complaint fails to state a claim. Consequently, the Court will dismiss without prejudice Plaintiff's RLUIPA and RFRA claims.

### E. Supervisory Liability

Next, it appears that Plaintiff wishes to assert supervisory liability claims against Governor Murphy, Director Ortiz, and Warden Cirillo. Generally, government officials are not liable for the unconstitutional conduct of their subordinates under a *respondeat superior* theory. *See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't Of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties.").

There are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the]

constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell*, 436 U.S. at 690. A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691. A plaintiff "must identify a custom or policy . . . and specify what exactly that custom or policy was" to satisfy the pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (noting that although this standard typically applies to municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory" (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). Under the second approach, a supervisor "may be personally liable if he participated in violating [ ] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, the Complaint fails to explain how Governor Murphy, Director Ortiz, and Warden Cirillo personally violated Plaintiff's constitutional rights. Plaintiff makes a single brief reference to unspecified customs and policies, ECF No. 3 at 27, and summarily blames Defendants. Plaintiff fails to describe these policies or customs, how they specifically caused or contributed to his injuries, or the nature of any injury. As discussed below, Plaintiff alleges numerous claims against the Defendants collectively, but fails to specifically tie individual actions to individual Defendants. Accordingly, the Court will dismiss without prejudice the supervisory liability claims against Governor Murphy, Director Ortiz, and Warden Cirillo.

### F. Remaining Claims

Plaintiff's remaining federal claims under 42 U.S.C. §§ 1983, 1985, 1986, and the Administrative Procedures Act, 5 U.S.C. § 702, also fail to state a claim. The Complaint often alleges that the Defendants acted in unison, without explaining the actions of each Defendant. Alternatively, Plaintiff often states that someone's rights have been violated, without specifying which Defendant or Defendants committed the wrong, and then concludes that all of the Defendants were somehow responsible. *See, e.g.*, ECF No. 3 at 18–24.

A plaintiff must generally allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). What Plaintiff has done here, however, is improper group pleading. "[C]onclusory allegations against defendants as a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to state a claim. *Id.* A complaint that contains "impermissibly vague group pleading" is subject to dismissal. *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

Apart from Chief Judge Wolfson's standing orders, Governor Murphy's unspecified orders, and Director Ortiz's unspecified declarations, Plaintiff fails to plead any specific acts by any Defendant. For example, throughout the Complaint, Plaintiff identifies general conditions without pleading that he personally needed, and was deprived, access to those services. ECF No. 3 at 18–21. As to Governor Murphy and Director Ortiz, "Plaintiff does not identify the orders or state how they caused the specific rights violations he wishes to challenge, or specify how any decisions, policies, [or] practices, . . . caused *him* harm." *Hill*, 2021 WL 3879101, at *4 (emphasis in original). Such claims "would not provide any meaningful opportunity for the [remaining] Defendants to decipher or answer the vague allegations levied against them." *Koehler*, 2019 WL

15

1231679, at *3; *see Twombly*, 550 U.S. at 555.  Likewise, CFG Medical Services is barely mentioned except to identify it as a Defendant.  At best, the Complaint alleges limited or sub-standard care ostensibly tied to CFG; for example, lack of medical and dental visits and "healthy teeth . . . pulled out . . . that often only needed a simple filling."  ECF No. 3 at 21.  However, like Plaintiff's other allegations, these allegations appear to apply to a putative class, which Plaintiff is not permitted to represent.  *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006).  And Plaintiff's civil conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986 suffer from similar deficiencies.  Plaintiff baldly alleges that every Defendant conspired to violate his rights without further elaboration.  However, Plaintiff "must instead plead facts showing actual agreement between the alleged conspirators and concerted action towards the object of the conspiracy."  *Cabbagestalk*, 2021 WL 2260517, at *3 (citing *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("[T]he bare allegation of an agreement is insufficient to sustain a conspiracy claim")).

Accordingly, the Court will dismiss without prejudice Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, 1986, and 5 U.S.C. § 702, for failure to state a claim.

Finally, all federal claims having been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, including any claims under the New Jersey Civil Rights Act ("NJCRA") or potential state medical malpractice claims against CFG Medical Services.  *See* ECF No. 3 at 21 (alleging improper dental care); 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).[4]

---

[4] The Court notes, however, that because the NJCRA is interpreted analogously to § 1983 claims, the NJCRA claims would also likely be dismissed for the same reasons as the § 1983 claims:  there are insufficient facts alleged detailing state Defendants' specific actions and their impact upon Plaintiff.  *Szemple v. Correctional Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) ("NJCRA is interpreted as analogous to § 1983.")

### G. Request for Jail Credits

In his Complaint, Plaintiff also seeks four extra jail credits for every day spent in detention during the pandemic for unspecified detainees. ECF No. 3 at 32-33. Detainees may not, however, use a civil rights complaint to "challenge the fact or length of [their] detention." *Pittman v. United States*, No. 21-10123, 2021 WL 2260518, at *2 (D.N.J. June 2, 2021). Rather, detainees must raise any claim "which would impugn or otherwise overturn the fact or length of . . . detention . . . via a criminal motion or a habeas petition." *Id.* (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Edwards v. Balisok*, 520 U.S. 641, 643–48 (1997)). Accordingly, the Court will dismiss Plaintiff's request for additional jail credits. *See Pittman*, 2021 WL 2260518, at *2.

## IV. CONCLUSION

For the reasons above, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims against the United States (except for Plaintiff's FTCA claim), the United States Department of Justice, the United States Marshals Service, the United States District Court for the District of New Jersey, former Chief Judge Wolfson for monetary relief, and Governor Murphy in his official capacity for monetary relief. The Court **DISMISSES WITHOUT PREJUDICE** the remainder of Plaintiff's federal claims and declines to exercise supplemental jurisdiction over his state-law claims. An appropriate Order follows.

Date: April 30, 2024

*/s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**